UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION EMPLOYEES' RETIREMENT TRUST, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br>  v.<br><br>VENATOR MATERIALS PLC, SIMON TURNER, KURT D. OGDEN, STEPHEN IBBOTSON, RUSS R. STOLLE, PETER R. HUNTSMAN, SIR ROBERT J. MARGETTS, DOUGLAS D. ANDERSON, DANIELE FERRARI, KATHY D. PATRICK, HUNTSMAN (HOLDINGS) NETHERLANDS B.V., HUNTSMAN INTERNATIONAL LLC, HUNTSMAN CORPORATION, CITIGROUP GLOBAL MARKETS INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, GOLDMAN SACHS & CO. LLC, and J.P. MORGAN SECURITIES LLC,<br><br>     Defendants. | Case No. 19-cv-7182<br><br>CLASS ACTION |

[Additional caption on following page]

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PUBLIC PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND <u>CONSOLIDATION OF ALL RELATED ACTIONS</u>**

| | |
|---|---|
| BONNIE YOON BISHOP, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br>     v.<br><br>VENATOR MATERIALS PLC, SIMON TURNER, KURT D. OGDEN, STEPHEN IBBOTSON, RUSS R. STOLLE, PETER R. HUNTSMAN, SIR ROBERT J. MARGETTS, DOUGLAS D. ANDERSON, DANIELE FERRARI, and KATHY D. PATRICK,<br><br>               Defendants. | Case No. 19-cv-8625<br><br>CLASS ACTION |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I. PRELIMINARY STATEMENT ............................................................................... 1

II. FACTUAL BACKGROUND .................................................................................... 4

III. ARGUMENT ............................................................................................................. 6

    A. The Public Pension Funds Should Be Appointed Lead Plaintiff ............................. 7

        i. The Public Pension Funds Believe That They Have the Largest Financial Interest in the Relief Sought by the Class ................................... 7

        ii. The Public Pension Funds Satisfy the Applicable Requirements of Rule 23 ................................................................................................ 8

        iii. The Public Pension Funds Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA ........................................................................ 9

    B. The Court Should Approve the Public Pension Funds' Selection of Lead Counsel ................................................................................................................ 13

    C. The Court Should Consolidate All Related Actions ............................................. 14

IV. CONCLUSION ........................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) ..................................................................................10, 11

*Chilton v. Chiumento Grp.*,
  365 F. App'x 298 (2d Cir. 2010) ............................................................................................7

*Jolly Roger Offshore Fund LTD v. BKF Capital Grp., Inc.*,
  No. 07 Civ. 3923(RWS), 2007 WL 2363610 (S.D.N.Y. Aug 16, 2007) ..................................9

*Mustafin v. GreenSky, Inc.*,
  No. 18-cv-11071 (PAE), 2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019) ................................10

*Reimer v. Ambac Fin. Grp., Inc.*,
  No. 08-cv-1273(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ....................7, 8, 10, 15

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(A) ..................................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(i) ...........................................................................................2, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .....................................................................................2, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ..................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ..................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ...............................................................................14

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ........................................................................................................2, 7, 8, 9

Fed. R. Civ. P. 42(a) .........................................................................................................1, 15

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ................9

The City of Miami General Employees' & Sanitation Employees' Retirement Trust ("Miami Retirement Trust"), Fresno County Employees' Retirement Association ("Fresno Retirement Association"), and City of Pontiac General Employees' Retirement System ("Pontiac Retirement System") (collectively, the "Public Pension Funds") respectfully submit this memorandum of law in support of their motion, pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"),[1] for an order: (i) appointing the Public Pension Funds as Lead Plaintiff; (ii) approving their selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the Class; (iii) consolidating all related securities class actions under Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)") and (iv) granting any further relief that the Court may deem just and proper.[2]

## I.   PRELIMINARY STATEMENT

On July 31, 2019, Miami Retirement Trust, through its counsel, Bernstein Litowitz, filed the first of the above-captioned securities class actions (the "Action"). The Action alleges that between August 2, 2017 and October 29, 2018, inclusive (the "Class Period"), global chemical company Venator Materials PLC ("Venator" or the "Company") and several of the Company's senior officers defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  The Action also alleges violations of Sections

---

[1] Because the lead plaintiff provisions of the Securities Act and the Securities Exchange Act of 1934 ("Exchange Act") are identical, only citations to the Securities Act are provided.

[2] The Public Pension Funds are simultaneously moving for appointment as Lead Plaintiff in *Cambria County Employees Retirement System v. Venator Materials PLC*, No. 19-cv-03464 (S.D. Tex. Sept. 13, 2019), a class action which alleges substantially identical claims to the claims alleged in this action.

11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l, and 77o) against Venator and certain of its senior officers, members of Venator's Board of Directors, certain underwriters, and selling shareholders (collectively, "Defendants") in connection with the Company's initial public offering of ordinary shares conducted on or around August 3, 2017 (the "IPO"), and the Company's secondary public offering of ordinary shares conducted on or around December 4, 2017 (the "SPO," and together with the IPO, the "Offerings").  Specifically, the Action alleges that Defendants misrepresented the true extent of damage caused by a fire at one of Venator's key chemical manufacturing plants in Pori, Finland in January 2017, as well as the cost to rehabilitate the facility and the impact on Venator's business.  As was revealed in a series of corrective disclosures, in truth, the fire damage at the Pori facility was far more extensive than Defendants had previously represented to investors, causing the cost of repair to climb to more than double the amount disclosed to investors before the IPO.  In fact, Venator ultimately announced that it would be abandoning the Pori facility altogether, despite the Company's previous assurances that the site would be repaired and restored back to its full operating capacity, and revealed that the Company faced significant additional restructuring expenses.  The revelation of these facts, and others more fully described below and in Miami Retirement Trust's complaint, caused the Public Pension Funds and other investors to incur significant losses.

      The PSLRA provides that the Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 77z-1(a)(3)(B)(i).  In that regard, the Court is required to determine which "person or group of persons" has the "largest financial interest" in the relief sought by the Class in this litigation and whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).  For the reasons discussed below, the Public Pension

Funds are the "most adequate plaintiff" by virtue of, among other things, the over $1.4 million in losses as calculated under a first-in, first-out ("FIFO") or last-in, first-out ("LIFO") basis, which they incurred on their investments in over 114,000 shares of Venator stock purchased during the Class Period.[3]  In addition to asserting the largest financial interest, the Public Pension Funds also satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the Class, and they will fairly and adequately represent the Class.

The Public Pension Funds are a paradigmatic Lead Plaintiff under the PSLRA because they are sophisticated institutional investors with a large financial interest in the litigation.  Further, each of the Public Pension Funds have significant experience serving in a fiduciary capacity and supervising the work of outside counsel.  As discussed in greater detail in the accompanying Joint Declaration, the Public Pension Funds fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this action.[4]  The Public Pension Funds' collaboration in this litigation follows from their roles as fiduciaries for pension funds and their shared goals and interests in protecting and maximizing pension-fund assets.  Further, as part of their effort to formalize their leadership over this action, the Public Pension Funds held a joint conference call to discuss the merits of the Venator action, the funds' common goals in the litigation, their shared desire to maximize the recovery for all Class members, and their joint litigation strategy— providing further evidence of their commitment and ability to effectively prosecute this action.

---

[3] The Public Pension Funds' PSLRA-required Certifications are provided as Exhibit A to the Declaration of Avi Josefson ("Josefson Decl.").  In addition, charts setting forth calculations of the Public Pension Funds' losses are provided as Exhibit B to the Josefson Decl.

[4] *See* Joint Declaration of Edgard Hernandez, Donald C. Kendig, and Walter Moore in Support of the Motion of the Public Pension Funds for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel (the "Joint Decl."), Josefson Decl., Ex. C.

Last, the Public Pension Funds have selected Bernstein Litowitz, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class.  Accordingly, the Public Pension Funds respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their motion.

## II. FACTUAL BACKGROUND

Venator is a global chemical company primarily focused on the development and manufacture of Titanium Dioxide, an opaque mineral that is used to enhance whiteness, opacity, and brightness in manufactured items such as paper, paints, and food products.  Venator was previously organized as the Pigments & Additives division within Huntsman Corporation ("Huntsman"), a multinational manufacturer of chemical products.  On May 5, 2017, Huntsman filed a registration statement with the SEC for an IPO of Venator shares (the "IPO Registration Statement").  *See City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Trust v. Venator Materials PLC*, No. 19-cv-07182 (S.D.N.Y. filed July 31, 2019) ("*City of Miami*"), ECF No. 1 ¶43.  On August 2, 2017, the SEC declared Venator's IPO Registration Statement effective.  *Id.*  On or around August 3, 2017, Huntsman conducted an IPO pursuant to the IPO Registration Statement.  *Id.*  On August 4, 2017, Venator filed a prospectus for the IPO on Form 424B4 (the "IPO Prospectus", and collectively with the IPO Registration Statement, the "IPO Offering Materials").  *Id.*  By means of the IPO Offering Materials, Venator offered and sold more than 26 million ordinary shares at $20.00 per share, resulting in over $522 million in gross proceeds for Huntsman.  *Id.*

Months earlier, however, on January 30, 2017, a fire had ravaged one of Venator's key Titanium Dioxide plants located in Pori, Finland.  The IPO Offering Materials misrepresented the true extent of the fire damage to Venator's Pori facility, the cost to rehabilitate the facility, and the impact on Venator's business and operations because of damage to the facility.  *Id.* ¶44.  Moreover,

4

the IPO Prospectus stated that the Pori facility would be fixed with insurance proceeds within the policy limit, and that the damage to the Pori facility would not have a material adverse impact to Venator's earnings during its second quarter. *Id.* ¶¶45-46. The IPO Prospectus also claimed that Venator was "well-positioned to capitalize" on growth opportunities in the Titanium Dioxide market, with a critical component of this outlook being 130,000 metric tons from the Pori facility (the facility's output if operating at full capacity). *Id.* ¶47. These representations and others indicated not only that Venator would be able to bring the Pori facility back to full capacity in the near term, but also that the Company would grow financial results beyond historical figures. *Id.*

Continuing throughout the Class Period, including in connection with Venator's December 2017 SPO, Defendants misrepresented the true extent of the fire damage to Venator's Pori facility, the cost to rehabilitate the facility, and the impact on Venator's business and operations. Defendants continued to assure investors that the rebuild of the Pori facility was on track, that repairs would be done with insurance proceeds within the policy limit, and that the Company would be able to fully recoup the production capacity lost in the fire. *Id.* ¶¶52-91. As a result of these misrepresentations, Venator shares traded at artificially inflated prices throughout the Class Period.

The truth began to emerge on July 31, 2018, when Venator revealed that the fire damage at the Pori facility was far more extensive than Defendants had previously represented to investors. Specifically, Venator announced that the cost to repair the facility had climbed to more than $375 million above the insurance policy limits, more than double the amount disclosed to investors just two months after the IPO. On this news, the price of Venator shares declined from $15.35 per share to $14.62 per share. *Id.* ¶¶92-93.

Then, on September 12, 2018, Venator announced that it was abandoning the Pori facility altogether, despite the Company's previous assurances that the site would be repaired and restored back to its full operating capacity. The Company also revealed that the facility was still only operating at 20% capacity and thus had not increased production by any meaningful amount during the thirteen months since the IPO. *Id.* ¶96. During an investor conference call held later that same day, Venator's Chief Executive Officer ("CEO"), Defendant Simon Turner, admitted that the Company had misrepresented the true extent of the fire damage. *Id.* ¶97. When asked by an analyst whether Venator had provided a "misestimate of the initial amount of damage from the fire" and whether "the actual work that needed to be done was missed," CEO Turner agreed that "it was a combination of factors, both of which, you've mentioned already." *Id.* These disclosures caused the price of Venator shares to decline from $11.35 per share to $10.81 per share. *Id.*

Finally, on October 30, 2018, Venator announced that, in addition to the over $500 million in costs and lost business associated with the Pori fire incurred to date, the Company incurred a restructuring expense of approximately $415 million and would incur additional "charges of $220 million through the end of 2024" related to the Pori site. *Id.* ¶98. As a result of these disclosures, the Company's stock price declined from $8.00 per share to $6.47 per share, or more than 19%. *Id.* ¶99.

### III.   ARGUMENT

Under the PSLRA, any Class member or group of Class members may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 77z-1(a)(3)(A). On July 31, 2019, Plaintiff Miami Retirement Trust filed the first securities class action complaint asserting claims under Sections 11, 12 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act against Defendants. *See City of Miami*, ECF No. 1. That same day, counsel for

Miami Retirement Trust, Bernstein Litowitz, published a notice on *PRNewswire*, which alerted investors to the pendency of *City of Miami* and set the deadline to seek Lead Plaintiff status by September 30, 2019.  *See* Josefson Decl., Ex. D.  Accordingly, the Public Pension Funds satisfy the PSLRA's 60-day requirement through the filing of this motion.

      **A.**     **The Public Pension Funds Should Be Appointed Lead Plaintiff**

The Public Pension Funds respectfully submit that they should be appointed Lead Plaintiff because they are the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 77z-1(a)(3)(B)(i).  The PSLRA establishes a presumption that the "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *see also Chilton v. Chiumento Grp.*, 365 F. App'x 298, 299 (2d Cir. 2010) (discussing qualifications for Lead Plaintiff presumption); *Reimer v. Ambac Fin. Grp., Inc.*, No. 08-cv-1273(NRB), 2008 WL 2073931, at *2 (S.D.N.Y. May 9, 2008) (same).  As discussed below, the Public Pension Funds are the "most adequate plaintiff," are uniquely qualified to represent the Class, and should be appointed as Lead Plaintiff.

        **i.**     **The Public Pension Funds Believe That They Have the Largest Financial Interest in the Relief Sought by the Class**

The Public Pension Funds should be appointed Lead Plaintiff because they believe that they have the "largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).  As demonstrated by their accompanying Certifications and loss calculations, the Public Pension Funds sustained losses of over $1.4 million as calculated under FIFO and LIFO from their Class Period purchases of over 114,000 shares of Venator stock.  *See* Josefson Decl., Exs. A-B.  To the best of the Public Pension Funds' knowledge, no other applicant seeking Lead Plaintiff appointment has a larger financial interest in the litigation.  Accordingly,

7

the Public Pension Funds have the largest financial interest of any qualified movant seeking Lead Plaintiff status, and are the presumptive "most adequate plaintiff." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). Moreover, Miami Retirement Trust purchased Venator shares traceable to both the IPO and the SPO, while Fresno Retirement Association and Pontiac Retirement System each purchased Venator shares traceable to the SPO. As a result, the Public Pension Funds have standing to assert Securities Act claims arising from those purchases.

> ii. **The Public Pension Funds Satisfy the Applicable Requirements of Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, the Public Pension Funds satisfy the applicable requirements of Rule 23. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, "a party moving for lead plaintiff . . . need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Ambac*, 2008 WL 2073931, at *4 (internal punctuation omitted). Here, the Public Pension Funds unquestionably satisfy both requirements.

The Public Pension Funds' claims are typical of the claims of other Class members. The typicality requirement is satisfied if the representative's claims "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (citation omitted). Here, the Public Pension Funds' and all other Class members' claims arise from the same course of events, and their legal arguments to prove Defendants' liability are identical. Like all other Class members, the Public Pension Funds: (1) purchased Venator securities during the Class Period, including pursuant or traceable to the Offerings; (2) at prices artificially inflated by Defendants' materially false and misleading statements and omissions and (3) were damaged by Defendants' fraud. Thus, the Public Pension Funds satisfy the typicality requirement.

The Public Pension Funds likewise satisfy Rule 23's adequacy requirement. Under Rule 23(a)(4), a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the Class's interests to be fairly and adequately represented: "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation." *Jolly Roger Offshore Fund LTD v. BKF Capital Grp., Inc.*, No. 07 Civ. 3923(RWS), 2007 WL 2363610, at *5 (S.D.N.Y. Aug 16, 2007) (citation omitted). The Public Pension Funds satisfy these elements because their substantial financial stake in the litigation provides them with the incentive to vigorously represent the Class's claims. Further, as discussed below, the Public Pension Funds have significant experience in serving in a fiduciary capacity and in supervising the work of outside counsel. Moreover, the Public Pension Funds' interests are perfectly aligned with those of the other Class members and are not antagonistic in any way, and there is no evidence of collusion among the litigants. There are no facts to suggest any actual or potential conflict of interest or other antagonism or collusion between the Public Pension Funds and other Class members.

Last, the Public Pension Funds have demonstrated their adequacy through their selection of Bernstein Litowitz as Lead Counsel to represent the Class in this action. As discussed more fully below, Bernstein Litowitz is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to conduct complex securities class action litigation effectively.

      **iii.**    **The Public Pension Funds Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA**

In addition to satisfying the requirements of Rule 23, the Public Pension Funds—large, sophisticated institutional investors collectively responsible for overseeing over $5.9 billion in

assets—are exactly the type of investors Congress sought to empower to lead securities class actions through the enactment of the PSLRA.  The Conference Committee for the PSLRA wrote in its report recommending the legislation that it "believe[d] that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995).  The Public Pension Funds are well suited to fulfill this Congressional intent.  *See* Josefson Decl., Ex. C, Joint Decl. ¶¶2-8.  In fact, Miami Retirement Trust has already taken steps to protect Class members' rights in this action by, among other things, investigating investors' claims and directing its counsel, Bernstein Litowitz, to file the first complaint asserting these securities fraud claims against Defendants. *Id.* ¶4.

In addition, the Public Pension Funds are a small, cohesive group of sophisticated institutional investors that determined on their own to jointly seek appointment as Lead Plaintiff and litigate this action independently of counsel and in the best interests of all Class members. *See id.* ¶¶9-11.  "Several courts in this District have recognized that a coalition of investors may appropriately be appointed lead plaintiff." *Mustafin v. GreenSky, Inc.*, No. 18-cv-11071 (PAE), 2019 WL 1428594, at *5 (S.D.N.Y. Mar. 29, 2019) (collecting cases).  This includes instances where the group's joint declaration explained, among other things, that its members were "cooperating and pursuing the litigation separately and apart from their lawyers," evidenced by "representatives of the members of the [groups holding] joint conference calls to discuss the litigation and to formulate a strategy." *Ambac*, 2008 WL 2073931, at *3; *see also GreenSky*, 2019 WL 1428594, at *5 ("[A]s set forth in the Fund Group's joint declaration, . . . the members of the Fund Group 'have demonstrated their intent to participate directly in this litigation and their willingness and ability to serve as class representatives.'"); *In re Bank of Am. Corp. Sec.,*

*Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (finding that "demonstrated cooperation among plaintiffs [through discussions and declarations memorializing their joint oversight over counsel and the action], particularly plaintiffs that are sophisticated institutional investors, satisfies concerns about designating groups as lead plaintiffs that are in fact dominated by counsel").

As discussed in their Joint Declaration, the Public Pension Funds have demonstrated their commitment to working cohesively as a group in the prosecution of this action. *See* Josefson Decl., Ex. C, Joint Decl. ¶¶9-16. The Joint Declaration demonstrates that the Public Pension Funds have already taken (and will continue to take) measures to ensure the vigorous prosecution of this action and oversee counsel. *See id.* ¶¶9-14, 16. Specifically, to formalize their leadership of the action, before seeking appointment as Lead Plaintiff, representatives of the Public Pension Funds participated in a conference call and discussed together, among other things, their losses arising from Defendants' misconduct and their strategy for prosecuting this case; the strength of the claims against Defendants; and their common goals in ensuring that this action is litigated as efficiently as possible and that the Class receives the best possible result. *See id.* ¶12.

The Joint Declaration also explains how and why the Public Pension Funds decided to collaborate in this litigation and describes how the group was formed. Specifically, before seeking Lead Plaintiff appointment, representatives of the Public Pension Funds consulted with each other and their proposed Lead Counsel regarding the merits of the claims against Defendants, their losses caused by Defendants' fraud, and their proposed litigation strategy. *See id.* ¶¶9, 12-13. Through the course of that consultation, the Public Pension Funds each expressed an interest in seeking to cooperate with a like-minded institutional investor in seeking appointment as Lead Plaintiff. *See id.* ¶9.

The Public Pension Funds agreed that their partnership would benefit the representation of the class in this action—a view that was informed by all three funds' significant experience in supervising the work of outside counsel, including Bernstein Litowitz, their proposed Lead Counsel in this case—as well as their prior and current roles as lead plaintiffs in other complex securities class actions. *See id*. ¶¶3, 6, 8, 10.  The Public Pension Funds' decision to jointly move for appointment as Lead Plaintiff also followed from their roles as fiduciaries for public pension funds and their shared goals and interests in protecting pension-fund assets.  *See* Josefson Decl., Ex. C, Joint Decl. ¶11.

For example, Miami Retirement Trust supervised the work of Bernstein Litowitz in *In re Symbol Technologies, Inc. Securities Litigation*, No. 02-cv-1383 (E.D.N.Y.), and *Louisiana Municipal Police Employees' Retirement System v. Deloitte & Touche LLP*, No. 04-cv-0621 (E.D.N.Y.)—related securities class actions arising out of an alleged accounting fraud at Symbol Technologies, Inc.—in which Miami Retirement Trust served as lead plaintiff alongside two other institutional investors, with Bernstein Litowitz as lead counsel, and recovered a total of $163 million for investors.  Miami Retirement Trust also served as lead plaintiff in *In re SMART Technologies, Inc. Shareholder Litigation*, No. 11-cv-7673 (S.D.N.Y.), with Bernstein Litowitz as lead counsel, and recovered $15.25 million for investors.

Similarly, Fresno Retirement Association has achieved outstanding results for investors when serving as a lead plaintiff in securities class actions prosecuted by Bernstein Litowitz as lead counsel, including in:  *In re Bristol-Myers Squibb Securities Litigation*, No. 02-cv-2251-LAP (S.D.N.Y.), in which it was co-lead plaintiff with three other institutions and recovered $300 million for investors; *In re Genworth Financial, Inc. Securities Litigation*, No. 14-cv-0682 (E.D. Va.), in which it was co-lead plaintiff with another institution and recovered $219 million for

investors; *In re comScore Securities Litigation*, No. 16-cv-1820-JGK (S.D.N.Y), in which it served as co-lead plaintiff with another institution and recovered $110 million for investors; and *In re Facebook, Inc., IPO Securities and Derivative Litigation*, No. 12-md-2389-RWS (S.D.N.Y.), in which it served as co-lead plaintiff with another institution and recovered $35 million for investors.

Likewise, Pontiac Retirement System's experience serving as a lead plaintiff in other securities class actions and achieving excellent results includes: *The Takara Trust v. Molex Incorporated*, No. 05-cv-1245 (N.D. Ill.), in which it recovered $10.5 million on behalf of investors; *Willis v. Big Lots, Inc.*, No. 12-cv-0604 (S.D. Ohio), in which it recovered $38 million on behalf of investors; and *City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.*, No. 12-cv-05162 (W.D. Ark.), in which it recovered $160 million on behalf of investors. Pontiac Retirement System has also served as a named plaintiff in other complex class actions, such as *Board of Trustees of the City of Pontiac General Employees Retirement System v. Northern Trust Investments*, No. 09-cv-7203 (N.D. Ill.), in which it obtained a substantial recovery on behalf of the class with Bernstein Litowitz as lead counsel.

Based on the Public Pension Funds' prior experience in litigating securities class actions, including as members of small, cohesive lead-plaintiff groups, their understanding that working together would allow for the sharing of experiences and resources, and their shared goals as public pension fund fiduciaries, they believed that forming a group would add substantial value to the prosecution of this action and would benefit the Class. *See id.* ¶¶9-15.

### B. The Court Should Approve the Public Pension Funds' Selection of Lead Counsel

The Court should approve the Public Pension Funds' selection of Bernstein Litowitz as Lead Counsel on behalf of the Class. The PSLRA provides that the Lead Plaintiff is to select and retain counsel to represent the Class it seeks to represent, subject to Court approval. *See* 15 U.S.C.

13

§ 77z-1(a)(3)(B)(v). The Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to do so in order to "protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Bernstein Litowitz is among the preeminent securities class-action law firms in the country. *See* Bernstein Litowitz's Firm Biography, Josefson Decl., Ex. E. Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-03288-DLC (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class. More recently, Bernstein Litowitz obtained a $1.06 billion recovery (inclusive of attorneys' fees) for the class in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, MDL No. 1658 (D.N.J.). Bernstein Litowitz also secured a resolution of $2.43 billion in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058-PKC (S.D.N.Y.), and a $730 million recovery in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522-SHS (S.D.N.Y.).

Other significant securities class actions in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel include *In re Nortel Networks Corp. Securities Litigation*, No. 05-md-1659-LAP (S.D.N.Y.) (recovering $1.3 billion for investors); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351-RJS (S.D.N.Y) (recovering $627 million for investors); *In re Lehman Brothers Equity/Debt Securities Litigation*, No. 09-md-2017-LAK (S.D.N.Y) (recovering $516 million for investors); and *In re Refco, Inc. Securities Litigation*, No. 05-cv-8626-JSR (S.D.N.Y.) (recovering $367 million for investors). Accordingly, the Court should approve the Public Pension Funds' selection of Bernstein Litowitz as Lead Counsel for the Class.

### C.  The Court Should Consolidate All Related Actions

Two related securities fraud class actions were filed in this District against Venator:

| Case | Civil No. | Date Filed |
|---|---|---|
| *City of Miami General Employees' & Sanitation Employees' Retirement Trust v. Venator Materials PLC* | 19-cv-7182 | 7/31/19 |
| *Bishop v. Venator Materials PLC* | 19-cv-8625 | 9/17/19 |

These actions present virtually identical factual and legal issues because they both arise out of the same alleged material misstatements and omissions regarding the strength of Venator's recovery from the fire at its Pori facility. Accordingly, consolidation of the *Bishop* action into the *City of Miami* action is appropriate under Rule 42(a). *See, e.g.*, *Ambac*, 2008 WL 2073931, at *1 (consolidating related actions that "contain the same factual and legal issues").

### IV.  CONCLUSION

For the reasons discussed above and in the accompanying papers, the Public Pension Funds respectfully request that the Court: (i) appoint the Public Pension Funds as Lead Plaintiff; (ii) approve their selection of Bernstein Litowitz as Lead Counsel for the Class; (iii) consolidate all related securities class actions under Rule 42(a); and (iv) grant any further relief that the Court may deem just and proper.

Dated: September 30, 2019

Respectfully submitted,

*/s/ Avi Josefson*
Hannah Ross
Avi Josefson
Michael D. Blatchley
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

*Counsel for Proposed Lead Plaintiff The Public Pension Funds, and Proposed Lead Counsel for the Class*

16